Hart, J.
 

 The sole question and assignment of error presented by the record in this case is whether the Court of Common Pleas was justified in sustaining the general demurrer to plaintiff’s amended petition, questioning its sufficiency to state a caus'e of action because of the alleged infirmities of the contract pleaded therein, and because of the character of the remedy sought. The specific claims of the.defendant are: (1) That the contract is void and unenforceable because of uncertainty, (2) that the contract lacks mutuality and (3) that plaintiff has an adequate remedy at law and is not entitled to a mandatory injunction to enforce a negative covenant in the contract.
 

 This contract calls for performance, not for a definite term, but so long as the plaintiff should own the fifteen shares of stock of the defendant company, or so long as he should continue in the business of selling gasoline, oil and grease. The contract may be uncertain as to point of time when it will terminate, but there is no uncertainty as to the event which will bring about its' termination, and in this respect the law is satisfied. Words which stipulate an ascertainable fact or event by which the duration of the term of a contract can be determined, make the contract definite
 
 *513
 
 and certain in that particular.
 
 Pallange
 
 v.
 
 Mueller,
 
 206 Wis., 109, 238 N. W., 815, 80 A. L. R., 1454.
 

 There is no specific amount of merchandise to be sold on the one hand or purchased on the other. The amount is to be determined by the requirements of the defendant as demanded by its business, a matter which is within the control of the defendant and about which it is not in position to complain. This contract in character is known as a requirement contract. Such contracts are not unusual and have been upheld generally by the courts. Of course, there must he terms, conditions, or circumstances from which quantities of material or merchandise sold may he determined, or at least approximated. But when such requirements have a fixed business basis, as distinguished from the mere whim of the party making the purchase, there is sufficient certainty in this' respect.
 

 The United States Circuit Court of Appeals for this district, in
 
 Lima Locomotive & Machine Co.
 
 v.
 
 National Steel Castings Co.,
 
 155 F., 77, 11 L. R. A. (N. S.), 713, gave careful consideration to a contract for furnishing “all your requirements in steel castings for the remainder of the present year.” The court sustained the contract as' sufficiently definite because the purchaser was engaged in an established business, the needs of which were understood by the seller. The court in the course of its opinion, at page 79, says:
 

 “The defendant was engaged in an established manufacturing business which required a large amount of steel castings. This was well known to the plaintiff, and the proposition made and accepted was made with reference to the ‘requirements’ of that well-established business. The plaintiff was not proposing to make eastings beyond the current requirements of that business, and would not have been obligated to supply castings not required in the usual course of that business. By the acceptance of the plaintiff’s proposal,
 
 *514
 
 the defendant was obligated to take from the plaintiff all castings which their business should require.”
 

 Business necessities require contracts of this class, though more or less indefinite, to be upheld. Thus a hotel keeper could purchase his necessary supply of ice, a foundry all the coal needed for the season, a furnace company its requirements of iron, a manufacturer of lubricating greases its oil requirements for a period of twelve months, or a canning company partnership all the labels required in its business for a period of three years but not those required by other companies in which the individual partners may have an interest. In such cases the quantities needed may be ascertained with some degree of certainty, and the intention of the parties, it is presumed, was to contract with reference to such quantity.
 
 Klipstein & Co.
 
 v.
 
 Allen
 
 (C. C. A.), 123 F., 992;
 
 Crane
 
 v.
 
 Crane & Co.,
 
 105 F., 869;
 
 Manhattan Oil Co.
 
 v.
 
 Richardson Lubricating Co.,
 
 113 F., 923;
 
 T. B. Walker Mfg. Co.
 
 v.
 
 Swtift & Co.,
 
 200 F., 529, 43 L. R. A. (N. S.), 730, 733;
 
 Wells
 
 v.
 
 Alexandre,
 
 130 N. Y., 642, 29 N. E., 142, 15 L. R. A., 218; 1 Page on Contracts (2 Ed.), 143, Section 100; 23 Ruling Case Law, 1266, Section 83. See also 7 A. L. R., 498, 14 A. L. R., 1300, and 24 A. L. R., 1352.
 

 “Where- the contract is to furnish a purchaser engaged in some business his requirements of a certain commodity which is used in such business, the contract will be construed to impose upon the seller the duty of furnishing the entire requirements of the buyer in that business providing the latter acts in good faith and without fraud in ordering' and using the commodity. The term ‘requirement’ is construed in such contracts to mean the actual needs of the buyer in his business during the life of the contract. The correlative duty of the buyer under such a contract is to púrchase from the seller the amount of the commodity which he actually requires for use in his business during the life of the contract. In such cases the quantity needed can
 
 *515
 
 be ascertained with some degree of certainty and tbe intention of the. parties it is presumed is to contract with reference to such quantity.” 9 Ohio Jurisprudence, 310, Section 80.
 

 These' uncertainties, if they may be called such, must have been in the minds of the parties at the time the contract in question was executed. They are dealt with by the deliberate covenants of the parties, and it is not the duty or function of the courts' to make or unmake them.
 

 The second claim of the defendant is that the contract lacks mutuality in that, while it is alleged in the amended petition that the defendant promised to purchase from the plaintiff all the gasoline, oil and grease required for its busses so long as plaintiff was the owner of its stock, yet there is no corresponding allegation of promise on the part of the plaintiff that he will furnish the required supplies to the defendant so long as he owns the stock, and the defendant requires or demands performance. Of course, if there is no consideration moving to the defendant for its promise to take its requirements' as to gasoline, oil and grease from the plaintiff, it is not obliged to. follow such promise with performance.
 

 Most authorities hold that a requirement contract is not lacking in mutuality where there is a promise of one party to sell and of another to purchase all of a commodity which the latter may require in his. business. The mutual promises are consideration one for the other. The authorities are to the effect that.so long as there is consideration for the obligation of the defendant, it is not essential that there be mutuality of obligation between plaintiff and defendant in order to sustain a right of action in the plaintiff against the defendant for a breach of such obligation; and as will be pointed out later, there is' such a situation in this case. But it is claimed that the courts pf this state are committed to the proposition that to make a valid con
 
 *516
 
 tract there must be not only mutuality as to obligation, but in order to invoke the remedy of specific performance, mutuality as to remedy as well.
 

 Defendant bases its contention in this regard on the authority of the case of
 
 Steinau
 
 v.
 
 Gas Co.,
 
 48 Ohio St., 324, 27 N. E., 545, wherein it is' held that a binding contract resulted where the gas company promised to deliver to the defendant all the gas required to illuminate his premises for a period of ten years, in consideration of a promise on the part of the defendant to receive and pay for such gas for such period of time at a specified rate named in the contract. On the other hand, the defendant having refused, after a period of'time, to accept the gas as provided in the contract, this' court held that the gas company was not entitled to prosecute a suit to enjoin the defendant from using electric light or any material other than gas supplied by the plaintiff for illuminating purposes on the premises of the defendant, for the reason, among_ others, that the contract, did not afford mutuality of remedy. The court said ‘ ‘ that a court of equity will not grant an injunction to restrain a breach of negative covenants where the result will be to effect' specific performance of affirmative covenants, unles's the affirmative stipulations of the complaining party can be specifically enforced against him,” and that since it was beyond the power of the court to compel the gas company to manufacture and supply gas to the defendant for a period of ten years, it could not enforce the covenants of the contract against the defendant by injunction. The court further observed that while there are cases to the effect “that ‘where there is’ a clear and continuing breach of a negative covenant in a contract, and where an injunction against the breach of it will do substantial justice between the parties by obliging the defendant to carry out his contract or lose the benefit of a breach of it, and the remedy at law is not adequate, or the damages for
 
 *517
 
 such a breach are not susceptible of proper assessment by a jury, a court of equity may properly restrain the defendant from such a breach, though the court might not be able to enforce a complete specific performance of the contract against the other party,’ ” yet the weight of authority is as stated by Pomeroy on Contracts (2 Ed.), 229 and 232, Sections 163 and 165, as follows:
 

 “The remedial right to a specific performance must be mutual. If, therefore, from the nature or form of the contract itself, from the relations of the parties, from the personal incapacity of. one of them, or from any other cause, the agreement devolves no obligation at all upon one of the parties', or if it cannot be specifically enforced against him, then and for that reason he is not, in general, entitled to remedy of a specific performance against his adversary party * *
 
 *.
 
 It is a familiar doctrine that if the right to the specific performance of a contract exists at all, it must be mutual; the remedy must be alike attainable by both parties to the agreement.”
 

 The
 
 Steinau case
 
 above referred to was decided almost fifty years ago. In the light of modern judicial authority it is doubtful whether the court can now go so far in the statement of the rule. Certainly the weight of authority at the present time is to the effect that it is not necessary, under all contractual situations, that there be mutuality of remedy as well as mutuality of obligation in order to invoke the remedy of specific performance.
 

 Space will not permit quotation from important modem legal authorities on this point. Sufficient at this time is the clear statement of the rule, the epitome of an exhaustive survey of the present-day case law, as it appears in 2 Restatement of Contracts, 677, Section 372, as follows: “The fact that the remedy of specific enforcement is not available to one party is
 
 *518
 
 not a sufficient reason for refusing it to the other party.”
 

 The comment on this section says:
 

 “The law does not provide or require that the two parties to a contract shall have identical remedies in case of breach. A plaintiff will not be refused specific performance merely because the contract is such that the defendant could not have obtained such a decree, had the plaintiff refus'ed to perform prior to the present suit. It is enough that he has not refused and that the court is satisfied that the defendant is not going to be wrongfully, denied the agreed exchange for -his performance. The substantial purpose of all attempted rules requiring mutuality of remedy is to make sure that the defendant will not be compelled to perform specifically without good security that he will receive specifically the agreed equivalent in exchange.
 
 '* * *
 
 The plaintiff may already have fully performed, in which case the defendant needs no remedy. If the plaintiff’s return performance is already due or will become due in specified portions as the defendant proceeds with his performance, the decree in the plaintiff’s favor will be made conditional on his rendering the return performance. * * * Such a decree sufficiently protects the defendant against having to give something for nothing; and it is not ess'ential that the plaintiff’s return performance should be one that will be specifically compelled.” See also 12 American Jurisprudence, 509 and 513, Sections 13 and 15.
 

 Whatever may be the rule under other circumstances, this court concludes that the contract involved in the case at bar may be specifically enforced against the defendant so far as' mutuality is concerned. As above noted, it does not appear from the record in this case that there was any promise or obligation on the part- of the plaintiff to furnish the requirements of the defendant for any definite period of time. The plaintiff therefore had the right to terminate the con
 
 *519
 
 tract at any time. Ordinarily such a contract would not be enforceable against the defendant for lack of mutuality. For instance a promise to buy all the coal mined from a certain mine is not binding because of want of consideration where the owner of the mine does not in turn promise to sell. A promise to accept a lesser sum than is due upon an obligation if paid within a certain time is not binding for want of mutuality unless before such offer is withdrawn it has been accepted and performed by the party to whom the offer was made. In other words, an offer, unsupported by •a consideration, may be revoked before acceptance even though an express period of time is given in which to accept. Only performance in such case will amount to acceptance and until there is performance the right to revoke remains unimpaired.
 
 Bretz
 
 v.
 
 Union Central Life Ins. Co.,
 
 134 Ohio St., 171, 16 N. E. (2d), 272.
 

 But in the case at bar there is an independent or collateral consideration, fully executed, which requires performance on the part of the defendant so long as the plaintiff fulfills the conditions which are necess'ary to keep the contract in force. The purchase of the stock by the plaintiff from the defendant and his payment of $7,500 in cash therefor furnishes a complete and adequate consideration for the obligation upon the part of the defendant to carry out the terms of this contract. The contract is similar to an option contract for the purchase of property where a consideration has been paid for the option. In such case the optionee may enforce the contract and compel the optioner to sell at any time within the option period while he, as optionee, is not obliged to buy. Under such contracts, consideration is essential, but mutuality of obligation is not. Where there is an independent consideration for the contract so that one promise does' not depend upon another for consideration, mutuality of obligation is not essential.
 
 Stenegaard
 
 v.
 
 Smith,
 
 43 Minn., 11, 44 N. W., 669;
 
 Luikart, Recr.,
 
 v.
 
 *520
 

 Massachusetts Bonding & Ins. Co.,
 
 129 Neb., 771, 263 N. W., 124;
 
 Turner
 
 v.
 
 Hall,
 
 128 Va., 247, 104 S. E., 861.
 

 This doctrine is well illustrated in the case of
 
 Himrod Furnace Co.
 
 v.
 
 Cleveland & Mahoning Rd. Co.,
 
 22 Ohio St., 451, 459, where the railroad company agreed with certain parties in consideration that they would build an iron furnace on the line of its road, to transport ore and metal to and from the furnace at a specified rate for the term of ten years when the parties required it so to do. These parties, on the strength of this promise, erected the furnace according to stipulations of the agreement, but after a time the railroad company refused to continue performance. The court held that the promise of the company to carry freight at the rates agreed upon was not void for want of consideration, or for want of mutuality of obligation between the parties; that while there was no promise upon the part of these parties to build the furnace in the first instance, having done so before the offer was withdrawn by the railroad company, there was consideration which entitled them to enforce the obligation.
 

 Since the plaintiff has given full and adequate consideration to the defendant in the purchase of the stock in the defendant company, there is a binding obligation upon the part of the ’ defendant to carry out its covenant in the contract to purchase its requirements from the plaintiff so long as the plaintiff retains the stock and furnishes the merchandise requirements to the defendant as stipulated in the contract. While there is no mutuality of obligation, there is sufficient consideration to require performance upon the part of the defendant so long as' the plaintiff demands it within the term of the contract and s'o long as he himself complies with the conditions which keep the contract in force. See annotations 14 A. L. R., 1300; 24 A. L. R., 1352, and 74 A. L. R., 476.
 

 Finally the defendant claims that the plaintiff may
 
 *521
 
 not maintain his equitable remedy here sought, because he has an adequate remedy at law. Again, the defendant claims its position is supported by the case of
 
 Steinau
 
 v.
 
 Gas Co., supra.
 
 In that case the contract under consideration called for a supply of gas which might be required to properly illuminate plaintiff’s premises, but not less in amount than three-fourths of the present average consumption of gas on such premises, for a definite fixed term and at a definite fixed rate to continue throughout the term.
 

 The court, in denying equitable relief in that case, was doubtless influenced by the definite terms of the contract by which damages might be reasonably estimated. Furthermore, the court, in its opinion, recognized the propriety of the equitable remedy of injunction where there is a continuing breach of an implied negative covenant'and an injunction against the br each of it will do substantial justice between the parties; or where the damages for such a breach are not susceptible of proper estimation by a jury. The term adequate remedy at law, as applied to a breach of contract, means that the legal remedy must be as efficient as the indicated equitable relief would be; that it must be presently available in a single action; and that it must be certain and complete, taking into consideration the specific advantages to which the plaintiff is entitled by the terms of his contract.
 

 The contract involved in the case at bar possesses contingencies as to time, quantity, and price, which experience gained from operation under the contract alone will make certain, and under these circumstances it seems to the court that the plaintiff does not have a complete and adequate remedy at law. There are cases where a party may be permitted to breach and abandon his1 contract and pay for his breach in damages, but he should have this privilege only when the other party will not suffer thereby. Ordinarily the stability of the business world is best conserved by re
 
 *522
 
 quiring contracting’ parties to perform their specific obligations rather than to compensate for a breach of them; and equity still operates to preserve such stability in proper cases. This view is well stated in 14 Ruling Case Law, 381, Section 82, as follows:
 

 “A
 
 court of equity will endeavor, to the extent of its powers, to bind men’s consciences so far as they can be bound to a true and literal performance of their agreements, and will not suffer them to depart from their contracts at pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give. It will,. therefore, in a proper case, enjoin the breach of a contract, notwithstanding’ the fact that the nature of the contract may be such that specific performance could not be enforced. Accordingly; the breach of a negative covenant in a contract may be enjoined.”
 

 As illustrating the propriety of the equitable remedy of injunction under circumstances such as exist in the case at bar, it has been held that where the plaintiff, engaged in the distribution of motor.vehicle supplies, leases to defendant a gasoline filling station with an express covenant that he will sell and the lessee will purchase from the plaintiff lessor throughout the term of the lease, at prices conformable to the established market for lessor’s products sold to other filling stations, all the 'motor vehicle supplies required by the business of the defendant as distributor of same to the exclusion of similar merchandise marketed by other persons, an injunction will is'sue to enjoin the lessee from violating the lease by selling gasoline purchased from a competitor of the lessor. See
 
 Stines
 
 v.
 
 Dorman,
 
 25 Ohio St., 580;
 
 Konst
 
 v.
 
 Christ Diehl Brewing Co.,
 
 79 Ohio St., 469, 87 N. E., 1137, affirming
 
 Chris. Diehl Brewing Co.
 
 v.
 
 Konst,
 
 12 C. C. (N. S.), 577, 20 C. D., 782.
 

 In the case of
 
 Hendler Creamery Co.
 
 v.
 
 Lillich,
 
 152
 
 *523
 
 Md., 190, 136 A., 631, the plaintiff was' a corporation engaged in the manufacture and distribution of ice cream and other commodities, while the defendant owned and conducted a drug store. Plaintiff and defendant entered into a three-year ontract by which, in consideration that plaintiff install a refrigerator service in defendant’s drug store, the latter agreed to buy and- use exclusively, and to the extent of his requirements during the period, the ice cream, sherbets and other frozen commodities made by the plaintiff at the wholesale price as' adopted by the plaintiff from time to time. After a period of one year the defendant undertook to handle ice cream and other products of another dealer, whereupon the plaintiff sought an injunction against the defendant from selling similar goods purchased from persons other than the plaintiff while the contract was in force. The court, in sustaining the injunction, says:
 

 “The only remaining question is' whether the contract, being valid, is enforceable in a court of equity. Of this we have no doubt. The damages which might be sought to be recovered in a court of law would be practically impossible of ascertainment because of the difficulty of determining in advance the quantity of the commodities which will be used, and, further, the impossibility of determining in sums of money the damage which would result fo the appellant by losing the advertisement of its own goods and having that of a competitor’s substituted at the appellee’s place of business.” See also to the same effect,
 
 Dairy Cooperative Assn.
 
 v.
 
 Brandes Creamery,
 
 147 Ore., 488, 30 P. (2d), 338;
 
 Renner Brewing Co.
 
 v.
 
 Rolland,
 
 96 Ohio St., 432, 118 N. E., 118;
 
 K-W Ignition Co.
 
 v.
 
 Unit Coil Co.,
 
 93 Ohio St., 128, 112 N. E., 199.
 

 We think the case at bar is similar to those above reviewed, and that plaintiff’s amended petition states a cause of action for equitable relief.
 

 The judgment of the Court of Appeals is therefore
 
 *524
 
 affirmed and this cause is remanded to the Common Pleas Court for further proceedings according to law.
 

 Judgment affirmed and cause remanded.
 

 Weygandt, C. J., Day, Zimmerman, Williams, Myers and Matthias, JJ., concur.